OPINION *Page 2 
{¶ 1} Appellant-mother Cindy Franklin appeals the January 17, 2007, judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of James Franklin, Jr., Amber Franklin and Dustin Franklin to Appellee Tuscarawas County Job Family Services ("TCJFS").
 {¶ 2} This case comes to us on the accelerated calendar. App. R. 11.1 which governs accelerated calendar cases, provides in pertinent part:
 {¶ 3} "(E) Determination and judgment on appeal. The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form. The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 4} This appeal shall be considered in accordance with the aforementioned rule.
 STATEMENT OF FACTS AND LAW {¶ 5} Cindy Franklin and her ex-husband James Franklin are the parents of three minor children: James (James, Jr.) Franklin, Jr. (D.O.B. 02/26/1990), Amber Franklin (D.O.B. 11/05/1991), and Dustin Franklin (D.O.B. 07/14/1993).
 {¶ 6} The Franklins' involvement with Children Services dates back to 1990, shortly after Appellant gave birth to James, Jr.
 {¶ 7} On May 23, 2005, in response to reports as to the failure of Appellant-mother to ensure that the basic needs of the children were being met, the Franklin children were removed from the home and placed into foster care. *Page 3 
 {¶ 8} On May 25, 2005, a Complaint was filed alleging that the Franklin children were neglected and dependent.
 {¶ 9} On June 22, 2005, an adjudicatory hearing was held wherein the TCJFS dismissed the count of neglect, and Appellant-mother stipulated to the dependency count as written. Mr. James Franklin was properly served with notice of all these proceedings, yet failed to appear. He had no contact with the TCJFS throughout the course of this case and has not visited or had any contact with his children since they came into care in May, 2005.
 {¶ 10} At the disposition hearing held July 20, 2005, a case plan was formally adopted for Appellant-mother. The case plan required Appellant-mother to undergo a psychological evaluation and follow all of its recommendations, obtain adequate housing including beds for the children, contact a home health agency for supportive services, complete parent education instruction, and participate in family therapy as deemed appropriate by the children's therapist, as well as several services able to be completed only upon reunification.
 {¶ 11} Also at the disposition hearing, Dustin and Amber were placed in the temporary custody of their relatives, Wendy Clyde Ford. However, these relatives were unable to maintain the children in their home due to their behaviors and Dustin and Amber were returned to the temporary custody of the TCJFS on August 17, 2005.
 {¶ 12} Appellant-mother initially made progress on the case plan, and eventually was granted unsupervised visitation, including overnights. The case then progressed to a point where a formal return of custody to Appellant-mother was considered; leading to the TCJFS filing a motion requesting such on May 26, 2006. However, the TCJFS later *Page 4 
withdrew this motion on July 6, 2006 upon discovering several concerns which had previously been unknown. These concerns included problems occurring during the visitation, and behavioral problems Amber was experiencing surrounding the visitation, which were unknown at the time of filing and later discovered through receipt of formal summary reports. In addition, reports were received from the children indicating that there were problems with Appellant-mother's supervision and disciplinary tactics during the unsupervised visitation. Following the withdrawal of the motion to return custody to Appellant-mother, visitation returned to being supervised.
 {¶ 13} On September 21, 2006, the TCJFS filed for permanent custody of all three children.
 {¶ 14} On January 11, 2007, a formal hearing was held on this motion and the TCJFS's motion was later granted by judgment entry.
 {¶ 15} Appellant then timely filed her notice of appeal, assigning the following sole error for review:
 ASSIGNMENT OF ERROR {¶ 16} "I. THE TRIAL COURT'S DECISION TO TERMINATE THE APPELLANT'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE PURSUANT TO R.C. 2151.414." *Page 5 
 I. {¶ 17} In her sole assignment of error, Appellant-mother argues that the trial court's decision was against the manifest weight of the evidence and not supported by clear and convincing evidence. We disagree.
 {¶ 18} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, 1982 WL 2911. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 19} Revised Code § 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court must schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 20} Following the hearing, R.C. § 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the TCJFS, and that any of the following apply: *Page 6 
 {¶ 21} "(a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 22} "(b) the child is abandoned and the parents cannot be located;
 {¶ 23} "(c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or
 {¶ 24} "(d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 25} Therefore, R.C. § 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. §2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 26} In the case sub judice, the Franklin children came into the custody of the TCJFS on May 23, 2005. (T. at 66). The Motion for Permanent Custody was filed on September 21, 2007, well in excess of the requisite twelve (12) months out of the previous consecutive twenty-two (22) months as required by R.C. § 2151.414(B)(1)(d).
 {¶ 27} Once the trial court ascertains that one of the four circumstances listed in R.C. § 2151.414(B)(1)(a) through (d) is present, the trial court then proceeds to an analysis of the child's best interest. In determining the best interest of the child at a permanent custody hearing, R.C. § 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: *Page 7 
 {¶ 28} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 29} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 30} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 31} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the TCJFS;
 {¶ 32} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. . . ." R.C. § 2151.414 (D).
 {¶ 33} Upon review, we do not find that the trial court abused its discretion in finding that it is not in the best interest of these children to be placed in the legal custody of Appellant-mother.
 {¶ 34} The judgment entry granting permanent custody specifically included a statement that the trial court had considered all the factors listed in R.C. § 2151.414. "The fact that the trial court did not specifically mention each of the factors listed in R.C. § 2151.414(D) does not mean that the trial court did not consider such factors."In re Schupach Children (July 6, 2000), Tuscarawas App. No. 2000 AP 010005. *Page 8 
 {¶ 35} In its Judgment Entry, the trial court specifically issued a finding containing information regarding the relationship between the Appellant-mother and the children which is supported by the record. The record also reflects the wishes of the children. The children's therapist testified that the children appeared more interested in obtaining their belongings from home, than in going home because they wanted to be with their mother. (T. at 24, 28, 31-33). The case manager also testified to the same effect. (T. at 68). The Guardian ad Litem report submitted on January 11, 2007, reflected the same, wherein the GAL stated:
 {¶ 36} "The undersigned met with the children and explained what permanent custody was and they all indicated they were happy where they were at and would welcome being adopted. . . All of the children wanted to know whether they could get their personal belongings from their mother's home." (GAL Report, January 11, 2007 at 6).
 {¶ 37} The trial court also issued findings which demonstrate that it considered the custodial history of the children and their need for permanency. (JE, January 11, 2007 at 1, 3). The record contains ample support for these findings. It is well established that the children have been in foster care since May, 2005. (T. at 61). The children's therapist testified that Dustin is extremely "parentified" and that he was never given an opportunity to be a child. (T. at 23-25). The TCJFS case manager testified regarding the long history that this family has had with the TCJFS. (T. at 75). She stated that some of the same issues have been recurring in this family dating back to 1990. (T. at 75).
 {¶ 38} The trial court also had before it the testimony of Melinda Caldwell, who was employed by Personal Family Counseling Services, and observed twenty-two of the twenty-five supervised visits, and who testified that following every visit someone *Page 9 
from her agency would discuss the visit with Appellant-mother and would make suggestions for improvement. (T. at 43). She further testified that these suggestions were always met with resistance. (T. at 43). According to Ms. Caldwell, attempts to discuss efforts to improve visitation were met with arguments about past issues. Ms. Caldwell testified that Appellant-mother never even was able to gain an understanding of why the agency became involved with her family in the first place. (T. at 44). Ms. Caldwell testified that in her professional judgment, Appellant-mother did not have the ability to move forward with that attitude. (T. at 44).
 {¶ 39} Ms. Caldwell also testified that she observed no significant improvement in Appellant-mother over the course of the visits. (T. at 46). The visits remained chaotic and Appellant-mother was unable to demonstrate an ability to enforce rules. (T. at 47).
 {¶ 40} Earlier in this case, Appellant-mother had progressed to the point where she was enjoying unsupervised, overnight visitation in her home. (T. at 84). However, the agency began receiving reports that some of the issues which led to the initial removal of the children were occurring. (T. at 88). TCJFS received information that Amber had been grounded by her mother because she had told both the case manager, and her foster mother that she had not properly received her medication while at her mother's home. (T. at 84). Amber also began experiencing behavioral problems in relation to visitation with her mother. (T. at 83). TCJFS also received reports from the residential center where James, Jr. was placed at the time that he was returning from weekend visitations with his mother with poor hygiene. (T. at 88). This was also an issue for the family early on in the case, which recurred while James, Jr. was in his mother's care. (T. at 88). *Page 10 
 {¶ 41} Furthermore, the trial court in its decision found that the Franklin children cannot and should not be placed with either parent within a reasonable time and that despite reasonable case planning efforts, both parents have failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions which caused the removal. (JE at 3). This finding is in compliance with R.C. § 2151.414(E) which requires the trial court to consider several factors when making the determination whether the children cannot be placed with either parent within a reasonable time.
 {¶ 42} Based on the foregoing, we find that the trial court had before it clear and convincing evidence upon which to grant permanent custody to the TCJFS and that same was not against the manifest weight of the evidence.
 {¶ 43} For the foregoing reasons, Appellant's sole assignment of error is overruled, and the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.
 Wise, P. J. Edwards, J., and Delaney, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is affirmed.
 Costs assessed to appellant. *Page 1